## BARTON v. MAY.

THE owner of two lots, which had been sold on an execution against him, agreed with M. that she should buy one of the lots, and pay the price by redeeming both from the sheriff's sale. M. was to take a deed from the sheriff, pay all liens and charges, and on receiving the surplus, beyond the price of the one lot, with interest, at a day fixed, was to convey the other lot to the vendor; or if such payment were not made, was to retain both lots. The vendor was by a like covenant, to give possession of the lot sold to M.—*Held*, that by the agreement, M. became the purchaser of the one lot, and took the other lot as a security for her advances beyond the price of the former; and that she was bound to convey to the vendor, on being refunded, such excess with interest.

*Held* further, that if the contract were to be treated as an agreement by M. to sell the other lot to the former owner, on payment of such excess, and receiving possession of the one at the time stipulated; a partial failure to deliver possession at that time, would not warrant M. in refusing to convey the other lot, on receiving the excess.

A bill for redemption, which sets forth a liquidation by the parties of the sum payable, and an offer to pay that sum, which was refused, need not contain an offer to pay what may be found due on an account to be taken.

Albany, January 23, 24; March 21, 1846.

THE bill was filed, by William R. Barton, against Hannah May, on the 22d day of December, 1843, and the cause disclosed the following facts :

James Maullin, being the owner and in possession ·of lots No. 307 and 308, in the third division of the village of Lansingburgh, the same were sold by virtue of an execution against him by the sheriff of the county of Rensselaer, on the 15th day of October, 1840. The time for Maullin to redeem having expired, he applied to the defendant, proposing to procure another judgment against himself to be assigned to her, so that she might redeem the premises, and thereupon on the 15th of January, 1842, an agreement under seal was executed by Maullin and the defendant, to the effect following. It recited that the defendant proposed to purchase lot No. 308, by redeeming that lot together with No. 307, from the sheriff's sale before mentioned, for which lot 308 she proposed to pay $1200, and was to apply the same to the discharge of the incumbrances on the premises. It was then agreed that she should be at liberty to pay all liens, taxes

Barton v. May.

and ground rents on lot 308, and if they exceeded $1200, she should retain and hold the title of lot 307, until the excess with interest was refunded by Maullin, when she would convey to him all her right and interest in lot 307 acquired by the redemption. Maullin was to give her possession of lot 308, on the first day of May, 1842, and if he did not, he was to pay her $50 per quarter as long as she remained out of possession; and he was to pay interest on the $1200, till the first of May, 1842. She was not to convey lot 307 to him, until she received full possession of lot 308, and payment of the sum stipulated, if kept out of possession, and of all costs and expenses incurred by her in making the redemption. Maullin was to pay the excess over $1200, and the other items stipulated, within one year from May 1, 1842, or she was to retain both the lots; and until that time, she was not to commence any proceedings to recover the possession of lot 308.

A judgment against Maullin was assigned to the defendant, who thereupon made the redemption agreed upon, and on the 18th day of January, 1842, received a deed of both lots from the sheriff.

On the first day of May, 1843, Maullin having remained in possession of both lots, a further agreement under seal was executed by the parties, and annexed to the former instrument, by which the amount which M. was to pay to the defendant, was liquidated at $285 11, with interest from that date, and the time for its payment was extended four months from that date. The defendant was to be at liberty to pay the back ground rent on lot 307, and the sum paid therefor, with costs and expenses, was to be refunded to her. The possession of lot No. 308, was to be forthwith delivered to the defendant, and any buildings standing thereon occupied by Maullin, were to be removed forthwith.

At this time there was a store on lot 308, on the north line, fronting on the street, and part of the wooden buildings on lot 307, occupied by Maullin, encroached from twenty inches to three feet on the south line of lot 308. The lots were each fifty by one hundred and twenty feet. The defendant at once entered upon the possession of lot 308, with the exception of the gore of land covered by the defendant's buildings. She had previous to

this, made some arrangements for building a brick dwelling on lot 308 during the summer of 1843, intending to place it on the line between that and lot 307. By the testimony she claimed to have sustained great damage, because Maullin's omission to re-move the encroachments on the line of the lots, prevented her from going on with her building till the ensuing year. The encroachment was actually removed on the first day of Septem-ber, 1843. The buildings occasioning it were old, and of a very light and trifling character, and could have been removed so as to stand wholly on lot 307, in a single day.

On the 31st of August, 1843, Maullin assigned the two agree-ments, and all his right and title to lot 307, to the complainant; who on the next day notified the defendant of the fact, and ten-dered and offered to pay her the $285 11 and interest, and re-quested her to execute a deed to him for lot 307; which she refused to do, on the ground that full possession of lot 308 had not been delivered to her as the contract provided, and that she was obligated to pay certain ground rents of the premises, and no tender of the same was made. As to the rent, she had prom-ised to pay it, but had not in fact paid it at the time of the offer.

A few days after, the tender was renewed with the addition of such ground rent, (which she had paid in the meantime,) and $42, for any damages she might have sustained by Maullin's delay in removing the buildings to the line of the lots. The defendant still refused to convey. Some negotiations and corres-pondence ensued, without any result, and then the bill was filed, praying a specific performance. the execution of a convey-ance, and general relief; the complainant offering to pay the monies tendered, which he after his offer deposited in a bank, subject to the defendant's order.

The answer set up Maullin's non-performance of his agree-ment to deliver full possession of lot 308, and that his omission caused her great damages. It insisted that she was not bound to convey the lot 307, and that it belonged to her.

A replication was filed, and testimony taken. The cause was brought to a hearing before the vice chancellor of the third cir-cuit, who on the 28th day of January, 1845, made a decretal order referring it to a master, to ascertain what damages, if any,

the defendant had or might sustain, in consequence of not having had full possession of lot 308, according to the agreement.

The master reported in effect, that the defendant had sustained no damages in consequence of the non-delivery of the possession, and that the tender to her on the first of September, 1843, was $2 83 more than she was then entitled to receive.

The cause now came on to be heard, on the master's report, the proofs taken before him, and the equity reserved.

C. C. Parmelee and Ira Harris, for the complainant.

H. P. Hunt, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The interlocutory decree, directed a reference to ascertain what damages, if any, the defendant had or might sustain in consequence of not having full possession of lot No. 308, forthwith after the first of May, 1843. I cannot understand this otherwise than as an adjudication, that the complainant's bill was sustained, leaving the terms of the relief to be adjusted upon the coming in of the master's report.

The defendant however, strenuously insisted that the decree was a mere order by consent ; and the cause having been fully argued on the merits, I will examine it as if there had been no interlocutory decree.

The effect of the contract of January 15, 1842, was this. The defendant became the purchaser of lot No. 308, for $1200; and she was to advance for James Maullin, all the money that was requisite in addition to the $1200, to discharge the liens and incumbrances on both lots. For her security, she was to take the title to lot No. 307, in her own name, and retain it until fully paid; and Maullin was to pay her interest on the $1200, till May 1, 1842, then a rent of $50 a quarter, so long as she was kept out of possession of lot No. 308, and he was to pay the advances beyond the $1200, on the first of May, 1843, with interest thereon, and all the costs and charges attending the transaction. There was an agreement on the part of Maullin to pay these several amounts, on which the defendant might have maintained an action of covenant, after the 1st of May, 1843. The

forms of the conveyances through which she derived the title, are wholly unimportant. Those forms were a part of the contract, and their effect is the same as if Maullin had conveyed directly to the defendant, on an agreement to discharge mortgages to a like extent.

I examined the subject of conveyances intended as a security, in *Brown* v. *Dewey*, (1 Sandford's Ch. R. 56,) and referring to that case and the authorities cited, it is sufficient to say here, that after she received the sheriff's deed in January, 1842, the defendant held the title of lot No. 307, as a security for the fulfilment of Maullin's stipulations contained in the contract.

The subsequent agreement dated May 1, 1843, merely extended the time of payment to Maullin, and liquidated the sum which was due for the advances and charges beyond the $1200, and the intermediate interest and the rent of lot No. 308. It contained an agreement by Maullin, to deliver the possession of that lot, and to remove the encroaching buildings forthwith. It contained no clause forfeiting his right to redeem lot No. 307, in default of payment of the money or of removing the buildings; and if such a clause had been inserted, it would have been nugatory. (See *Remsen* v. *Hay*, 2 Edw. Ch. R. 535.)

The result is, that on the first of September, 1843, the complainant had a perfect right as the assignee of Maullin, to have a conveyance of lot No. 307, on the conditions provided in those two instruments.

The defendant refused to acknowledge his right, and interposed a claim for damages, by reason of Maullin's neglect to remove his buildings on lot 307, which encroached on lot 308. This is the claim which the Vice-Chancellor referred, and the master has reported that she sustained no damages in consequence of the continuance of those encroachments from May till the first of September. I have looked into the testimony, and am satisfied that the master's conclusion is correct. The defendant does not claim in her answer, any damages by reason of her being subjected to respond to Aikin on her building contract; and the loss alleged in argument and deduced from the probable enhanced rent she would have received from her new building, is not supported by the proofs.

The removal of the buildings, is shown to have been a very trivial affair, and if the defendant had really been in earnest about erecting her house in May, 1843, I have no doubt that the removal would have been accomplished by Maullin on request, or by the defendant herself, if he had continued to neglect it. The truth is obvious, that she and Aikin had given up the idea of building there, during the summer of 1843 ; and this small affair was a mere pretext to cover her refusal to give up lot No. 307, after she had become persuaded that the deed of that lot might be used to defeat Maullin's rights entirely.

If these contracts were to be treated as an agreement to, sell lot 307 to Maullin, and not as a security, it would not alter the case. No court of equity would refuse to enforce it, on so unimportant an omission as that set up in respect of the encroaching buildings.

It is objected to the bill, that it was not framed for a redemption ; and if it were, it is fatally defective for the want of an offer to pay what may be found due on an account to be taken. I think there is no force in this point. The bill states the facts, and an offer to pay more than was due, and it prays for a conveyance, as well as general relief. No account was necessary. There were no rents to be accounted for by the defendant, nor any items against her. The sums to be paid were definite, and the only computation requisite, was that of interest.

The answer charges some fraud, in the transfer from Maullin to the complainant. It is an indefinite charge, not proved ; and is not stated as a matter of which the defendant could avail herself.

The first tender was of a sufficient sum. Neither the ground-rent nor the assessment had been paid at that time. The subsequent tender included all these charges, and was also sufficient. As the amount was immediately placed in the bank, subject to her disposal, and has since remained there, she must accept it without interest.

I have struggled to find some excuse upon which to relieve this woman from the costs of the suit, but without success. The offer to arbitrate about the damages, was one which the complainant was under no obligation to accept. In this suit, the de-

fendant does not litigate for these damages merely. She stoutly controverts the whole claim of the complainant, insists that she owns lot 307, and is not bound to convey it at all, and adheres to this position to the last. Whether it be owing to her cupidity, her obstinacy, or to bad advice, or all these combined, she has been the cause of this suit, and she must defray its expenses.

There must be a decree for a conveyance of lot No. 307, to the complainant accordingly, with costs. The defendant is entitled to the money deposited, which was tendered to her, and if she has paid ground rents or the like, *pendente lite,* which were not covered, by the tender, the same with interest may be allowed to her and deducted from the complainant's costs.